September 2, 2004.

**D.F. and D.F., on behalf of, N.F., Plaintiffs,**

v.

**RAMAPO CENTRAL SCHOOL DISTRICT, Defendant.**

No. 03 Civ. 7494(SCR).

United States District Court, S.D. New York.

Oct. 13, 2004.

Gary S. Mayerson, Mayerson & Associates, New York, NY, for Plaintiff.

Carl L. Wanderman, Esq., Montebello, NY, for Defendant.

## DECISION AND ORDER

ROBINSON, District Judge.

N.F., represented here by his parents D.F. and D.F., is a five year old child who suffers from autism, expressive, reception and pragmatic language disorder, fine motor-graphomotor skills deficit and auditory processing disorder. He is on the severe end of the spectrum of Pervasive Development Disorder and is on the mentally retarded side of the spectrum of intellectual development. He is a severely disabled child.

Under the Individuals with Disabilities Education Act ("IDEA"), the defendant School District is required to establish and maintain procedures "to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education" 20 U.S.C. § 1415(a). Towards that end, defendant must develop and implement an individualized educational plan ("IEP") for disabled children. 20 U.S.C. § 1414(d).

During the 2002–2003 school year, N.F. attended a non-public, full-day pre-school known as Prime Time for Kids ("Prime Time") at public expense. The placement was pursuant to an IEP designed by the defendant School District. The details of the instruction to be provided at Prime Time were developed by the School District's Committee on Preschool Education

("CSPE") at their meetings on October 30, 2002 and January 22, 2003, when they designed or revised N.F.'s IEP. On October 30, 2002, an IEP was designed that provided a full-day program for N.F. Under this IEP, N.F. received 1500 minutes of weekly instruction in a class containing six students, staffed by a teacher and two aides, one of whom was designated for N.F. individually. He was also provided with occupational therapy, parent counseling, physical therapy, and speech/language therapy. At the October 30, 2002 meeting, the CPSE resolved to review and revise the goals and objectives for N.F., which they did on January 22, 2003. On that date, the goals and objections of the earlier IEP were revised to accord with the recommendations of the staff at Prime Time.

Plaintiffs complain that the IEPs for N.F. were inadequate, and seek to add one-on-one home instruction to them.[1]

Under IDEA, whenever a complaint is received relating to the provision of a free and appropriate public education, an impartial due process hearing must be held. 20 U.S.C. § 1415(f)(1). Such a hearing was held, and a decision upholding N.F.'s IEPs and denying the requested additional services was issued on June 17, 2003.

Any party aggrieved by the findings and decision rendered in an impartial due process hearing may appeal to the State educational agency. That agency must conduct an impartial review of the hearing officer's decision and make an independent decision upon completing such review. 20 U.S.C. § 1415(g). N.F. and his parents made such an appeal, but it was unsuccessful. The State Review Officer issued a decision on October 17, 2003 that upheld the IEPs as providing a fair and adequate

public education as required by IDEA and denied additional at-home instruction.

Any party aggrieved by the findings and decision of the impartial reviewing body has the right to bring a civil action in district court. 20 U.S.C. § 1415(i)(2)(A). N.F. and his parents do so here.

Under IDEA, a district court is required to receive the records of the administrative proceeding, hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, grant such relief as it determines is appropriate. 20 U.S.C. § 1415(i)(2)(B). However, federal courts reviewing administrative decisions must give "due weight" to the administrative proceedings, remaining "mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Walczak v. Florida Union Free School District,* 142 F.3d 119, (2d Cir.1998). When a federal court reviews a challenged IEP, it should consider whether the challenged IEP was "reasonably calculated to enable the child to receive educational benefits." *Board of Educ. v. Rowley,* 458 U.S. 176, 206–07, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

Although IDEA does not articulate any specific level of educational benefits that must be provided, an "appropriate" education is decidedly *not* defined as one that "maximize[s] the potential of handicapped children." *Rowley,* 458 U.S. at 196, n. 21, 102 S.Ct. 3034. A reviewing court may not "impose[ ] its view of preferable educational methods upon the States." *Id.,* at 207, 102 S.Ct. 3034. Rather than "maximize the potential of handicapped children," *Id.,* at 189, 102 S.Ct. 3034, the

---

1. Plaintiffs also make various allegations of procedural inadequacies and failures. This decision does not address the fulfillment or lack thereof of procedural requirements of IDEA. It is purely concerned with Plaintiffs' substantive challenge.

intent of IDEA was "more to open the door of public education to handicapped children on appropriate terms than to guarantee any particular level of education once inside." *Id.* at 192, 102 S.Ct. 3034. Congress expressly recognized that in many instances, the process of providing special education and related services to handicapped children is not guaranteed to produce any particular outcome. *Id.* at 192, 102 S.Ct. 3034. However, "[I]mplicit in the congressional purpose of providing access to a free appropriate public education is the requirement that the education to which access is provided is sufficient to confer some educational benefit upon the handicapped child." *Id.* at 200, 102 S.Ct. 3034. "The basic floor of opportunity provided by [IDEA] consists of access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." *Id.* at 201, 102 S.Ct. 3034. If "personalized instruction is ... provided with sufficient supportive services to permit the child to benefit from the instruction ... the child is receiving a free appropriate public education." *Id.*, at 189, 102 S.Ct. 3034 (internal quotations omitted). "This is not done if an IEP affords the opportunity only for trivial advancement. An appropriate public education under IDEA is one that is likely to produce progress, not regression." *Walczak*, 142 F.3d at 130 (internal quotations omitted). The goal of Congress in passing IDEA was to make access to education "meaningful." *Rowley*, 458 U.S. at 192, 102 S.Ct. 3034.

Thus, the key questions before this court are: (1) whether the IEPs implemented for N.F. were reasonably calculated to ensure N.F. had a "meaningful," rather than "trivial," access to education, and (2) if the opportunities for education received by N.F. under his IEPs were not "meaningful," should the sought after supplemental home instruction be mandated?

At oral argument, the lawyer for the School District stated that the "only expert who testified [before the Hearing Officer] who had any probative value at all was Lisa Delaney, and that was because the child was placed in her program and she was [the person] most familiar" with N.F. Ms. Delaney was N.F.'s special education teacher, as well as the ABA program supervisor,[2] and an assistant director of Prime Time. She testified that while N.F. had made progress in reducing aggressive behaviors towards others, in his ability to transition, transcript of April 15, 2003 at 110–111, and in cooperation and reinforcer effectiveness, and which are prerequisite to the attainment of other skills, he had made "limited" and "not meaningful" progress over the course of his instruction of his time at Prime Time. Transcript of April 15, 2003, 172. She further stated that N.F. needed ten hours of additional meaningful and appropriate instruction outside of school, and that those hours should be distributed both on weekdays and on weekends. Transcript of April 15, 2003, 138–139.

Ellen Weiner, Chairperson for Prime Time, testified before the Hearing Officer that N.F.'s needs were being met by Prime Time. Transcript of April 15, 2003, 84. She also testified, however, that she did not know of any child in the district getting extended day services. Transcript of April 15, 2003, 42–43. Ms. Weiner is an administrator, and did not directly work with or extensively observe N.F.'s prog-

---

**2.** ABA stands for Applied Behavioral Analysis. At its most basic level, ABA is a very structured method of teaching autistic children.

ress.[3] The Hearing Officer did not mention Ms. Weiner's testimony in his decision, but the State Review Officer took note of Ms. Weiner's statements. State Review Officer Decision, 6. The State Review Officer also noted that the professionals who worked with or observed N.F., including his developmental pediatrician, school psychologist, neurologist and special education teacher, were in full agreement that N.F.'s therapy should be provided during and extended to after school and weekend hours, with the recommended period of additional hours ranging from a floor of ten hours to a ceiling of forty hours per week. *Id.* The State Review Officer found that,

> The Prime Time special education teacher was able to elicit minimal progress in pre-academic and study skills, communication, transitioning, cooperation, reduced aggression, and reinforcer effectiveness; though referred to by the special education teacher as limited progress, she also testified that it was progress prerequisite to the attainment of more academic skills.... Given the child's severe disabilities, that progress is nothing short of meaningful.

State Review Officer Decision, 6.

■ With all due respect to the State Review Officer, I disagree with his assessment. "Minimal progress" and "limited progress" is not evidence of "meaningful" access to education. "Minimal" and "limited" progress is evidence of opportunity for only trivial advancement. Ms. Delaney, N.F.'s teacher and the program supervisor, recognized this distinction in her deposition testimony when she noted that N.F. had made "progress" in cooperation, he had only "limited progress" generally, and that such progress could not be character-

ized as meaningful. Transcript of April 15, 2003, 172.

■ The School District argues that there is no standard for educating severely autistic children, and no probable certainty that with a certain number of hours of education, a certain amount of progress can be expected. IDEA does not require results, however, but merely a reasonable opportunity for a disabled child to receive a meaningful education, i.e. something more than an opportunity for only trivial advancement. *Walczak,* 142 F.3d at 130.

The documentary and oral evidence presented to the court shows that *all* the people who examined or worked with N.F. for a significant period of time felt that N.F. needed some amount of at-home instruction. The *sole* expert credited by the defense as giving probative testimony stated that she felt that N.F. had made minimal, limited progress, and that she felt he needed ten hours of instruction in addition to what he received at Prime Time. There is, additionally, significant evidence in the record that N.F. failed to make meaningful progress through the execution of his IEPs, and that personal instruction outside of school was necessary. Other than the statements attributed to Ms. Weiner and the State Review Officer's interpretation of Ms. Delaney's testimony, there is no evidence in the record that shows that N.F.'s IEPs were sufficient to provide him with a free available public education as mandated by IDEA.

Under the standards articulated in *Rowley, Walczak,* and *Grim,* I find by a vast preponderance of the evidence that N.F. has been denied a free and appropriate public education.

Because all of the parties who examined or worked with N.F. found that he needed

---

3. Ms. Weiner admitted that she had never observed N.F. at home, and that she had only observed him at Prime Time on four to six occasions. Transcript of April 15, 2003, 61.

at home ABA therapy in addition to the instruction he received at Prime Time, and because the parties varied on the amount of instruction they felt N.F. needed, and because time has passed since their assessment of N.F. was given to the Hearing Examiner and N.F. may need more instruction today than when this suit was filed, the School District is hereby ORDERED to provide a minimum of ten hours of one-on-one, at-home ABA therapy to N.F. The School District is further ORDERED to discuss with N.F.'s parents, instructors, and experts whether more at-home, one-on-one ABA therapy is needed, and to provide it if it is so needed.

IT IS SO ORDERED.